IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D
DEC 1 4 2012
J T NOBLIN CLERK
BY _____ DEPUTY

UNITED STATES OF AMERICA,
*ex rel.*, DEEDY DIAMOND, NICHOEL
CHAISSON, and SANDRA FAIRLEY                             PLAINTIFFS

V.                            CIVIL ACTION NO. 1:12cv393 LG-JMK

ST. JOSEPH HOSPICE
and PATRICK MITCHELL                                     DEFENDANTS

**FILED UNDER SEAL**

## COMPLAINT

*Qui tam* relators, Deedy Diamond, Nichoel Chaisson, and Sandra Fairley ("Relators"), by their undersigned attorneys, hereby allege as follows:

1. This is a civil action brought on behalf of the United States of America against St. Joseph Hospice and its owner/President, Pat Mitchell (collectively referred to as "Defendants") to recover damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729-3733, as amended by the False Claims Act Amendments of 1986, the Fraud Enforcement and Recovery Act of 2009, and the Patient Protection and Affordable Care Act of 2010. Relators, acting on behalf of the United States, bring this civil action under the *qui tam* provisions of the False Claims Act, as amended in 1986.

## Venue and Jurisdiction

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1345 and 31 U.S.C. §§ 3730(b) and 3732(a).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) and 31 U.S.C. § 3732(a). Defendants, or certain of them, were doing business in this district during the relevant time period, and the claims set forth in this Complaint arose, at least in part, in this district.

## The Parties

4. *Qui tam* relator Diamond is a United States citizen and a resident of the State of Mississippi. Diamond worked as a General Manager at St. Joseph Hospice from December 5, 2011 until January 27, 2012.

5. *Qui tam* relator Chaisson is a United States citizen and a resident of the State of Mississippi. Chaisson worked as a Marketing Representative at St. Joseph Hospice from December 5, 2011 until January 27, 2012.

6. *Qui tam* relator Fairley is a United States citizen and a resident of the State of Mississippi. Fairley worked as QAPI Coordinator and HR Manager at St. Joseph Hospice from February 20, 2012 until October 10, 2012.

7. Defendant St. Joseph Hospice operates more than a dozen hospice facilities in Mississippi and Louisiana. St. Joseph is based in Baton Rouge, Louisiana and is owned by defendant Patrick Mitchell.

8. Defendant Patrick Mitchell is the owner and President of St. Joseph Hospice. Mitchell is a resident of the State of Louisiana.

## The Law

9. The False Claims Act (FCA) provides in pertinent part that:

> (1) Any person who (A) knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; (C) conspires to commit a violation of [the Act]; ... or (G) knowingly makes, uses, or causes to be made or used , a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,
>
> * * *
>
> is liable to the United States Government for a civil penalty of not less than [$5,500 and not more than $11,000], plus 3 times the amount of damages which the Government sustains because of the act of that person....
> (b) For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) require no proof of specific intent to defraud.

31 U.S.C. § 3729.

## Medicare and Hospice

10. The United States, through the Department of Health and Human Services ("HHS") and its component agency, the Centers for Medicare and Medicaid Services

("CMS"), administers the Medicare Part A and Medicare Part B programs. Generally, hospitals are reimbursed through the Medicare Part A program, and physicians are reimbursed through the Medicare Part B program. The United States also pays for health care services through numerous other health care programs, including Medicaid and CHAMPUS. Hospice services are reimbursed through Medicare Part A.

11. Hospitals, physicians, and hospice providers who participate in the Medicare program, as well as other federal health care programs, are required to enter into contracts or "provider agreements" with HHS. Under the terms of these provider agreements, hospitals, physicians, hospice providers, and other participating health care providers certify that they will comply with all laws, regulations, and guidance concerning proper practices for Medicare providers. Compliance with these provider agreements is a condition for participation in, and receipt of payments from, the Medicare program.

12. A "hospice" is a public agency or private organization that is primarily engaged in providing care to terminally ill individuals, meets the conditions of participation for hospices, and has a valid Medicare provider agreement. Hospice care is an approach to caring for terminally ill individuals that stresses palliative care (relief of pain and uncomfortable symptoms), as opposed to curative care. In addition to meeting the patient's medical needs, hospice care is intended to address the physical, psychological, and spiritual needs of the patient, as well as the psychological needs of the patient's family and/or caregiver. The emphasis of the hospice program is on keeping the

hospice patient at home with family and friends as long as possible.

13. In order to be eligible to elect hospice care under Medicare, an individual must be entitled to Medicare Part A and be certified as being "terminally ill." 42 C.F.R. § 418.20. To be considered "terminally ill" for purposes of qualifying for hospice services reimbursed by Medicare, a physician must certify that the individual's prognosis is for a life expectancy of 6 months or less if the terminal illness runs its normal course. 42 C.F.R. § 418.22. When submitting claims to Medicare Part A for hospice reimbursement, hospice providers certify that the patients to whom hospice services were delivered were eligible for Medicare's hospice benefit.

## Defendants' Scheme

14. Defendants have engaged in a corporate-wide pattern of conduct that has resulted in the submission of thousands of false claims and statements to the United States. As a result of this conduct, Defendants have received from the United States millions of dollars to which they were not entitled.

15. Defendants routinely admit into hospice patients who are not eligible to receive hospice benefits from Medicare Part A. In furtherance of this scheme, Defendants falsify patients' life expectancy in order to "qualify" those patients for hospice reimbursement from Medicare, maintain patients on hospice after their medical condition has stabilized rather than discharging them from hospice as required by Medicare regulations, and exaggerate patients' "signs and symptoms" in order to

5

"qualify" them for hospice reimbursement from Medicare.

16. In addition, Defendants aggressively market "continuous care" hospice services and routinely bill continuous care services to the government for patients who do not qualify for that level of care. Continuous care is an approved hospice benefit that is to be billed only when hospice patients are in acute crisis. In the hospice context, a period of crisis is defined as a period in which a patient requires predominately nursing care to achieve palliation or management of acute medical symptoms. Crisis care is generally warranted only in cases of intractable nausea, vomiting, diarrhea, shortness of breath, hemorrhage, or caregiver crisis. The government pays substantially more for continuous care hospice services than it does for routine hospice care.

17. Beginning in or around 2010, Defendant Mitchell devised a scheme whereby Defendant St. Joseph Hospice, through its marketers and other staff, engaged in a concerted effort to convince hospitals and the families of hospice patients that hospice patients should be enrolled in St. Joseph's continuous care hospice program. Defendants represented to hospital administrators and staff that St. Joseph's ability to provide "around the clock hospice care" was beneficial to the hospital because it provided a means to discharge patients sooner and thereby save hospitals money and increase profits. Defendants represented to the families of hospice patients the benefits of getting "around the clock hospice care" without any additional cost to the families. This provided St. Joseph with a competitive advantage over its competitors who did not abuse the

continuous care program. As a result of these efforts, the continuous care revenues of St. Joseph increased from $26,000 in 2009 to $373,000 in 2010, $2.57 million in 2011, and $3.9 million from January 1, 2012 through August 31, 2012.

18. Pursuant to their responsibilities at St. Joseph, Relators participated in St. Joseph's marketing practices and reviewed the charts of numerous Medicare beneficiaries receiving hospice services from St. Joseph. Relators' chart reviews revealed that a substantial percentage of patients enrolled with St. Joseph were not eligible for the Medicare hospice benefit. In addition, Relators discovered that a substantial percentage of St. Joseph patients for whom continuous care services were billed were not in crisis situations at the time those claims were submitted and therefore did not qualify for the continuous care benefit.

19. The patients identified in Exhibit "A," attached hereto, are among the St. Joseph patients who did not qualify for hospice care under the Medicare program. Each and every claim submitted to Medicare by Defendants for hospice services provided to these patients was a false claim submitted in violation of the False Claims Act. Thousands of additional false claims were submitted by Defendants for other patients who were not qualified for Medicare's hospice benefit.

20. The patients identified in Exhibit "B," attached hereto, are among the St. Joseph patients who did not qualify for continuous care hospice under the Medicare program. Each and every claim submitted to Medicare by Defendants for continuous care

7

hospice services provided to these patients was a false claim submitted in violation of the False Claims Act. Thousands of additional false claims were submitted by Defendants for other patients who were not qualified for Medicare's continuous care hospice benefits.

21. As a result of the conduct of Defendants alleged herein, Defendants submitted thousands of false claims to the United States. As part of the scheme alleged herein, Defendants made thousands of false statements regarding the true condition of its hospice patients and the nature of the services provided to its patients in order to get false or fraudulent claims approved by the Government. These false representations were material to the decision of the Government to pay the false claims submitted by Defendants. Consequently, Defendants received millions of dollars from the United States to which they were not lawfully entitled.

## COUNT I

Claim By and on Behalf of the United States under the False Claims Act
(Presenting False Claims)

22. Plaintiffs reallege and incorporate by reference paragraphs 1 through 21 as though fully set forth herein.

23. This is a claim under the False Claims Act, 31 U.S.C. §§ 3729-33, as amended.

24. Relators have standing to maintain this action by virtue of 31 U.S.C. §3730(b).

25. By virtue of the acts described herein, Defendants knowingly presented false

or fraudulent claims for payment, or knowingly caused false or fraudulent claims for payment to be presented, to officials of the United States Government in violation of 31 U.S.C. § 3729(a)(1)(A), as amended.

26. By virtue of the false claims presented or caused to be presented by Defendants, the United States has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT II

Claim By and on Behalf of the United States under the False Claims Act (False Records or Statements)

27. Plaintiffs reallege and incorporate by reference paragraphs 1 through 21 as though fully set forth herein.

28. This is a claim on behalf of the United States under the False Claims Act, 31 U.S.C. §§ 3729-33, as amended.

29. Relators have standing to maintain this action by virtue of 31 U.S.C. §3730(b).

30. By virtue of the acts described above and Defendants' use of, or activities causing to be used, false records and statements to get false and fraudulent claims paid and approved by the Government, Defendants caused to be made or used false records or statements to get false or fraudulent claims paid or approved by an agency of the United States Government, in violation of 31 U.S.C. § 3729(a)(1) (B).

31. By virtue of, and as a result of, the false records and statements used to get false claims paid by the Government, the United States has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT III

Claim By and on Behalf of the United States under the False Claims Act
(Conspiracy to Submit False Claims)

32. This is a claim under the False Claims Act, 31 U.S.C. §§ 3729-33, as amended.

33. Plaintiffs reallege and incorporate by reference paragraphs 1 through 21 as though fully set forth herein.

34. By reason of the foregoing with respect to Defendants' fraudulent scheme, Defendants conspired together, and with others, to defraud the government in order to get false or fraudulent claims paid by Medicare, in violation of 31 U.S.C. § 3729(a)(1)(C), as amended. In furtherance of the conspiracy, Defendants acted to affect the objects of the conspiracy alleged herein.

35. By virtue of the false claims presented or caused to be presented by Defendants pursuant to this conspiracy, and by virtue of the false statements made in furtherance of this conspiracy, the United States has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money

penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## PRAYER FOR RELIEF

WHEREFORE, the United States demands and prays that judgment be entered in favor of the United States:

1. On Counts I - III, under the False Claims Act, against Defendants for treble the amount of the United States' actual damages (including investigative costs), plus civil penalties as are allowable by law for each false claim or record and for all costs of this civil action;

2. For all costs of this civil action; and

3. For such other and further relief as the Court deems just and equitable.

WHEREFORE, Relators demand and pray that judgment be entered in their favor:

1. On Counts I - III, under the False Claims Act, for a percentage of all civil penalties and damages obtained from Defendants pursuant to 31 U.S.C. § 3730, reasonable attorney's fees, and all costs incurred against Defendants; and

2. Such other relief as the Court deems just and proper.

Respectfully submitted,

*[signature]*

J. Cliff Johnson II (Mississippi Bar #9383)

ATTORNEY FOR RELATORS

Pigott & Johnson, P.A.
775 N. Congress Street
Post Office Box 22725
Jackson, Mississippi 39225-2725
Telephone: (601) 354-2121
Facsimile: (601) 354-7854

Mariano J. Barvie, Esq.
Hopkins, Barvie & Hopkins
Post Office Box 1510
Gulfport, Mississippi 39502-1510
Telephone: (228) 864-2200
Facsimile: (228) 868-9358